UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| LCW INVESTMENTS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:24-cv-00282-JAW |
| | ) | |
| BETH CLIFFORD, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON MOTION TO DISMISS OR, ALTERNATIVELY, MOTION TO STAY

A limited liability company asked the court to enforce a foreign-country money judgment against an individual pursuant to Maine's Uniform Foreign-Country Money Judgments Recognition Act. The defendant filed a motion to dismiss or, alternatively, to stay. Concluding the plaintiff has not established the foreign-country judgment is final, conclusive, and enforceable pending appeal, the court grants in part and dismisses in part the defendant's motion and orders the matter dismissed without prejudice.

## I. PROCEDURAL HISTORY

On August 5, 2024, LCW Investments, LLC (LCW) filed a complaint in this Court against Beth Clifford seeking recognition of a foreign-country money judgment pursuant to Maine's Uniform Foreign-Country Money Judgments Recognition Act (Uniform Act), 14 M.R.S. § 8801 *et seq.* *Compl.* (ECF No. 1).

On October 10, 2024, Ms. Clifford filed a motion to dismiss the complaint or, alternatively, to stay the proceedings pending a foreign appeal. *Mem. of Law in*

*Support of Def.'s Mot. to Dismiss or, Alternatively, Mot. to Stay* (ECF No. 20) (*Def.'s Mot.*).  On October 28, 2024, LCW responded in opposition.  *Pl.'s Resp. in Opp'n to Def.'s Mot. to Stay or Dismiss* (ECF No. 21) (*Pl.'s Opp'n.*).  On November 12, 2024, Ms. Clifford replied.  *Reply in Further Support of Def.'s Mot. to Dismiss or, Alternatively, Mot. to Stay (ECF No. 20)* (ECF No. 22) (*Def.'s Reply*).

## II.   THE FACTUAL RECORD[1]

### A.   The Parties

LCW Investments, LLC is a limited liability company with its principal place of business in Denver, Colorado.  *Compl.* ¶ 1.  All members of LCW are natural persons domiciled in the state of Colorado.  *Id.*  Steve Williams is a member and director of LCW.  *Id.*

Beth Clifford is a natural person domiciled in the state of Maine.  *Id.* ¶ 2.  As relevant to the present case, she serves, respectively, as the Director of Beltway Investment Group, Inc. (Beltway), a Nevada corporation, and of Green Development Partners, Ltd. (Green), a company based in St. Lucia.  *Id.*

### B.   The 2017 Agreement

On April 3, 2017, Mr. Williams and Ms. Clifford entered into an agreement (the Agreement) on behalf of, respectively, LCW and Green, pursuant to which Ms.

---

[1]    Consistent with the motion to dismiss standard, the Court relied on the complaint's well-pleaded facts.  "[T]he court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)); *see also Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements").

Clifford "would cause a parcel of real estate in the country of Belize to be sold to LCW, with a house (also referred to as a 'Keeping Suite') to be built thereon." *Id.* ¶ 6.

Per the Agreement, LCW was to pay the full sum of $788,709.00, including closing costs, to Beltway after signing.[2]  *Id.* ¶ 7.  By October 31, 2017, LCW "in fact paid the full sum of $788,709.00 to Beltway." *Id.* ¶ 8.  However, title to the real estate set forth in the Agreement was never conveyed to LCW.  *Id.* ¶ 9.

### C.    The Belize Litigation

LCW proceeded to sue Clifford, Green, and Beltway in the High Court of Belize (the High Court), seeking recission of the Agreement and restitution of the $788,709.00 that LCW had paid.[3]  *Id.* ¶ 10.  The matter proceeded as Claim No. 193 of 2020 in the High Court, for which a full trial was conducted on July 5-7 and 13, 2022.  *Id.* ¶¶ 11-12.   Ms. Clifford testified at trial.  *Id.* ¶ 13.  Following trial, the Honorable Madam Justice Sonia Young of the High Court issued a Judgment Order awarding LCW $788,709.00 plus 6% interest per annum from August 5, 2019 against Green only.  *Id.* ¶ 14 (citing *id.*, Attach. 1, *J. Order* at 2 (ECF No. 1-1) (*Belize High Ct. J. Order*)).

The parties cross-appealed to the Court of Appeal of Belize (the Court of Appeal), at which time the matter was redesignated Civil Appeal No. 11 of 2023.  *Id.*

---

[2]    Unless specified otherwise, all money amounts discussed in this order are stated in U.S. Dollars.

[3]    The High Court of Belize is subject to the appellate review of the Court of Appeal of Belize. Per a constitutional amendment effective  June 2010, the Caribbean Court of Justice is the final court of review of Belize.  *The Judiciary*, GOVERNMENT OF BELIZE PRESS OFFICE, https://www.pressoffice.gov.bz/the-judiciary/#:~:text=The%20High%20Court%20of%20Belize,criminal%20proceedings%20under%20any%20law (last visited Dec. 3, 2024).

¶ 15.  On June 20, 2024, a unanimous three-judge panel of the Court of Appeal issued its Judgment (the Court of Appeal Judgment) in favor of LCW, awarding LCW $788,709.00 plus 6% interest per annum from August 5, 2019 "against **all three** defendants: Clifford, Green, and Beltway, jointly and severally."  *Id.* ¶ 16 (citing *id.*, Attach 2., *J. Order* at 39 (ECF No. 1-2) (*Belize Ct. App. J*)) (emphasis in original).

Ms. Clifford and Beltway have filed notice of appeal seeking further review by the Caribbean Court of Justice, the court of last resort for civil matters in Belize and several other Caribbean nations.  *Id.* ¶ 17.  As of August 5, 2024, the judgment in favor of LCW remained "entirely unpaid" such that Ms. Clifford owes LCW $788,709.00 plus annual interest accruing at 6% beginning on August 5, 2019.  *Id.* ¶¶ 19, 20.

## III.  THE PARTIES' POSITIONS

### A.  The Allegations in the Complaint

The Plaintiff begins by directing the Court to Maine's Uniform Foreign-Country Money Judgments Recognition Act, 14 M.R.S. § 8801 *et seq.*, which governs the recognition of a judgment of a foreign country's court in the state of Maine.  *Id.* ¶ 24.  LCW avers that the Uniform Act applies to the Court of Appeal Judgment in this matter pursuant to 14 M.R.S. § 8803(1) because: "(a) the Court of Appeal Judgment grants recovery of a sum of money, (b) under the law of Belize—i.e., the country where the Court of Appeal Judgment was rendered—the Court of Appeal Judgment is final, conclusive, and enforceable, and (c) none of the exclusions provided in . . . 14 M.R.S. § 8803[(2)] apply."  *Id.* ¶ 24.  LCW insists that "[t]he Court of Appeal Judgment is

4

final and fully enforceable against Clifford in Belize notwithstanding Clifford and Beltway's notice of appeal to the Caribbean Court of Justice." *Id.* ¶ 18.

Moreover, LCW claims that this Court's recognition of the Court of Appeal Judgment is mandatory pursuant to 14 M.R.S. § 8804(1) and 14 M.R.S. § 8807, *id.* ¶ 25, and that no grounds exist for declining to recognize the Court of Appeal Judgment under 14 M.R.S. §§ 8804(2) or (3), *id.* ¶ 26. Finally, LCW asserts the action is timely because it is brought within fifteen years of the date on which the Court of Appeal Judgment became effective in Belize. *Id.* ¶ 27. The Plaintiff argues the Court of Appeal Judgment is "thus subject to recognition and enforcement by this Court in the same manner as a judgment rendered in a sister state." *Id.* ¶ 28.

LCW seeks the following relief: (1) recognition of the Court of Appeal Judgment pursuant to 14 M.R.S. § 8804(1); (2) entry of a judgment by this Court in an amount equal to, and subject to the same terms as, the Court of Appeal Judgment of $788,709.00 plus 6% interest per annum from August 5, 2019; (3) reasonable attorney's fees, costs, and expenses; and (4) all damages authorized at law or equity. *Id.* at Prayer for Relief, § IV.

### B.    Beth Clifford's Motion to Dismiss or, Alternatively, to Stay

Ms. Clifford moves the Court to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to stay the proceedings pending a foreign appeal pursuant to Federal Rule of Civil Procedure 8(a). *Def.'s Mot.* at 1.

As a preliminary matter, the Defendant says the Uniform Act applies to foreign-country judgments that grant or deny a sum of money and that are final,

conclusive, and "enforceable under the law of the foreign country where it was rendered." *Id.* at 4 (citing 14 M.R.S. § 8803). She asserts that the party seeking recognition must establish that the Uniform Act applies, and a court must then recognize a foreign judgment absent a mandatory or discretionary ground. *Id.* (citing M.R.S. § 8804).

### 1. The Motion to Dismiss

The Defendant concedes that a court ruling on a motion to dismiss "takes factual averments contained in the complaint as true, indulging every reasonable inference helpful to the plaintiff's case." *Id.* at 5 (citing *Dartmouth Rev. v. Dartmouth Coll.*, 889 F.2d 13, 16 (1st Cir. 1989); *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988)). Nonetheless, Ms. Clifford argues "it is clear here that Plaintiff failed to plead facts sufficient to pierce the corporate veil and thus the Complaint should be dismissed." *Id.*

Ms. Clifford first urges the Court to dismiss the complaint pursuant to its discretionary authority not to recognize a foreign-country judgment if "[t]he judgment or the cause of action or claim for relief on which the judgment is based is repugnant to the public policy of this State or the United States," 14 M.R.S. § 8804(3)(C), which she avers applies to the Court of Appeal Judgment. The Defendant begins by asserting that to state a claim for alter ego liability under Maine law, a plaintiff must demonstrate: "(1) the officer or director abused the privilege of a separate corporate identity; and (2) an unjust or inequitable result would occur if the court recognized the separate corporate existence." *Id.* at 6 (citing *Stanley v. Liberty*, 2015 ME 21, ¶

27, 111 A.3d 663 (citation amended) (in turn quoting *Town of Lebanon v. E. Lebanon Auto Sales LLC*, 2011 ME 78, ¶ 8, 25 A.3d 950 (citation amended)).  Further, she states that for contractual disputes such as the case at bar, Maine law imposes "more stringent standards" for piercing the corporate veil.  *Id.* (citing *Theberge v. Darbro, Inc.*, 684 A.2d 1298, 1301 (Me. 1996)).  Piercing the corporate veil is an equitable remedy, she avers, and "the corporate form should only be disregarded 'where a claimant demonstrates both: (1) some misuse of the privilege of the corporate form; and (2) an inequitable result.'"  *Id.* (quoting *Johnson v. Exclusive Props. Unlimited*, 1998 ME 244, ¶ 10, 720 A.2d 568 (citation amended)).

Applying Maine's two-prong test to the case at bar, Ms. Clifford argues it would be "entirely inappropriate" to pierce the corporate veil in the instant matter.  *Id.* at 7-8.  The Defendant alleges that piercing the corporate veil is "an extremely high bar" and "LCW did not put forth anything more than speculation with regard to Beltway or Clifford's alleged impropriety."  *Id.* at 8.  Instead, she says, "the Court of Appeal proceeded to make the argument for LCW, concluding that piercing the corporate veil would be appropriate given that funds were transmitted to Beltway[']s PNC Bank Account."  *Id.* (citing *Compl.* ¶ 8).

Ms. Clifford argues that imposing liability on the Defendant would contravene Maine's public policy, and the Court should thus exercise its discretion not to recognize the Court of Appeal Judgment pursuant to 14 M.R.S. § 8804(3)(C).  *Id.* at 9-10.  Arguing Maine's public policy "is clear about treating corporations as separate legal entities with limited liability," she avers the Court should not enforce the Court

7

of Appeal Judgment because doing so "would run counter to Maine's public policy regarding corporations and personal liability." *Id.* at 10. Here, she says, the Plaintiff has not alleged or introduced evidence of fraud or illegality and the record contains "no concrete evidence" that Ms. Clifford or Beltway were intentionally using the corporate form of Green to justify any wrongs. *Id.* (citing *id.*, Attach. 6, *J. Order* ¶ 112).

Ms. Clifford argues it would be inappropriate for the Court to recognize the foreign-country judgment for two additional reasons: first, there is a foreign appeal pending and, second, the basis upon which the Court of Appeal revised the trial court's judgment and assigned liability to Ms. Clifford and Beltway "is inherently flawed." *Id.* at 11. On the first point, the Defendant alleges "[i]t would be duplicative, inefficient and a waste of judicial resources to proceed with recognizing the foreign judgment since the judgment is currently under review and stands a strong likelihood of reversal." *Id.* (citing *id.*, Attach. 3, *Notice of Appl. for Leave to Appeal to the Caribbean Ct. of Just.*). Turning to the second point, Ms. Clifford asserts the Court of Appeal inappropriately engaged in independent fact-finding beyond what was alleged and established before the High Court and "LCW brought forth no evidence to prove that Defendant Clifford abused the corporate form." *Id.*

## 2. The Motion to Stay

Should the Court reject her motion to dismiss, Ms. Clifford requests the Court alternatively grant her motion to stay pursuant to 14 M.R.S. § 8808:

> If a party establishes that an appeal from a foreign-country judgment is pending or will be taken, the court may stay any proceeding with regard

8

to the foreign-country judgment until the appeal is concluded, the time
for appeal expires or the appellant has had sufficient time to prosecute
the appeal and has failed to do so.

*Id.* at 12 (quoting 14 M.R.S. § 8808).  Here, she says, Ms. Clifford and Beltway filed

an appeal on July 19, 2024 and the Court of Appeal granted leave to appeal to the

Caribbean Court of Justice on October 10, 2024.  *Id.* (citing *Notice of Appl. for Leave*

*to Appeal*).   Given the pending appeal with the Caribbean Court of Justice, the

Defendant avers it would be inefficient, duplicative, and a waste of judicial resources

for this Court to proceed with Plaintiff's lawsuit at the present time.  *Id.*  Ms. Clifford

alleges further that issuance of a stay will not substantially injure the Plaintiff and

is in the public interest.  *Id.* (citing *Auer v. Lanier Worldwide, Inc.*, No. 08-528-JJF,

2009 U.S. Dist. LEXIS 62307 (D. Del. July 20, 2009); *Republic of Philippines v.*

*Westinghouse Elec. Corp.*, 949 F.2d 653 (3d Cir. 1991)).

     The Defendant continues to argue a stay would be appropriate pursuant to the

statutory text of 14 M.R.S. § 8804: "A court of this State need not recognize a foreign-

country judgment if . . . the judgment conflicts with another final and conclusive

judgment."  *Id.* (quoting 14 M.R.S. § 8804(3)(D)).  If this Court allows LCW to collect

on the Court of Appeal Judgment, and the Caribbean Court of Justice subsequently

reverses that decision, this "could result in conflicting judgments"; Ms. Clifford

submits the potential for conflicting judgments is a basis for the Court to deny

confirmation of the judgment.  *Id.* at 12-13 (citing *Laker Airways Ltd. v. Sabena,*

*Belgian World Airlines*, 731 F.2d 909, 937 (D.C. Cir. 1984) (noting "[n]o nation is

under an unremitting obligation to enforce foreign interests which are fundamentally

prejudicial to those of the domestic forum"); *Hulley Enterps. Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 285 (D. D.C. 2016)).

### C.  LCW's Opposition

#### 1.  The Opposition to the Motion to Dismiss

LCW opposes the Defendant's motion to dismiss its complaint. *Pl.'s Opp'n* at 1. First, the Plaintiff notes that Ms. Clifford acknowledged in her motion that courts reviewing a complaint confronted with a motion to dismiss "take[] factual averments contained in the complaint as true, indulging every reasonable inference helpful to the plaintiff's cause." *Id.* (quoting *Def.'s Mot.* at 5 (in turn citing *Dartmouth Rev.*, 889 F.2d at 16; *Gooley*, 851 F.2d at 514)).   LCW alleges that, despite this acknowledgement, Ms. Clifford "devotes substantial portions of her motion to her own factual narrative and to attacking the factual accuracy of the underlying judgment that Plaintiff seeks to enforce, none of which is properly before the Court at this stage *if ever*." *Id.* (citing *Def.'s Mot.* at 1, 2) (emphasis in original).

Next, the Plaintiff alleges the Defendant mischaracterizes the pleading standard at the motion to dismiss stage.  LCW quotes Ms. Clifford's motion to dismiss as stating that LCW has failed "to plead facts that are specific or sufficient enough to prove alter ego liability."  *Id.* at 3 (quoting *Def.'s Mot.* at 6).  "In making this argument," LCW says, "Defendant has essentially taken what she believes is a defense to the *underlying judgment* (*i.e.*, that there is some defect in the Belize judgment) and has repackaged that purported defense as an argument that Plaintiff has failed to meet its pleading burden."  *Id.* (emphasis in original).

All LCW was required to plead in its complaint in this Court, it says, were facts sufficient to prove: (1) the existence of a foreign-country judgment that "grants or denies recovery of a sum of money," *id.* (quoting 14 M.R.S. § 8807), and (2) that judgment is "conclusive" and "enforceable." *Id.* (quoting 14 M.R.S. § 8807(1), (2)). If a complaint plausibly alleges each of these facts, then enforcement is mandatory pursuant to the Uniform Act unless the defendant can prove a basis for non-enforcement exists. *Id.* The Plaintiff specifically claims that a defendant must "plead such basis in an *answer*, not in a motion to dismiss." *Id.* (citing 14 M.R.S. § 8804(4) ("A party resisting recognition of a foreign-country judgment has the burden of establishing that a ground for nonrecognition stated in subsection 2 or 3 exists"); *Kaiser Found. Health Plan, Inc. v. Pfizer, Inc.*, 712 F.3d 21, 45 (1st Cir. 2013) (a plaintiff's complaint need not "prove a series of negatives"); *Colt Int'l Clothing, Inc. v. Quasar Sci., LLC*, 304 F. Supp. 3d 891, 894 (C.D. Cal. 2018) ("Plaintiff is not required to anticipate each fact-based defense [the defendant] might assert and plead facts to refute that defense")) (emphasis in original).

Here, LCW asserts it met its burden to survive the motion to dismiss by pleading (1) that a unanimous three-judge panel of the Court of Appeal of Belize issued a judgment awarding LCW $788,709.00 plus 6% interest per annum from August 5, 2019, and (2) that the judgment "is final and fully enforceable against Clifford in Belize notwithstanding Clifford and Beltway's notice of appeal to the Caribbean Court of Justice." *Id.* at 3-4 (quoting *Compl.* ¶¶ 16, 18). Responding to the Defendant's argument that the judgment is not final because it is pending appeal,

LCW alleges "[b]ecause the Belize Court of Appeals Judgment is final, conclusive, and enforceable in Belize, it is enforceable in Maine.  That is no different from the enforceability of any ordinary judgment, which is enforceable notwithstanding the pendency of an appeal." *Id.* at 7 (citing *Kane v. Town of Harpswell*, 254 F.3d 325, 328 (1st Cir. 2001) (holding that a prior judgment was final "even where the first [judgment] is still on appeal") (collecting cases).

Next, LCW alleges that the Defendant's arguments regarding Maine law's requirements to pierce the corporate veil or to prove alter ego liability are irrelevant to the present action, *id.* at 4 (citing *Def.'s Mot.* at 6-9), because "Plaintiff is not seeking to prove any of that in this action."  *Id.*  LCW reports it "already has a judgment against Clifford, and Plaintiff simply seeks to enforce that judgment" and "no provision in the Uniform Act contemplates relitigating the theories underlying the foreign-country judgment, let alone doing so at the pleading stage." *Id.*

The Plaintiff characterizes Ms. Clifford's efforts as an attempt to relitigate the case she lost in the Court of Appeal of Belize before this Court and analogizes to "a party losing in state court who seeks to vindicate his or her federal rights by challenging the adverse state action in federal district court," which the Supreme Court has prohibited under the *Rooker-Feldman* doctrine. *Id.* (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1227 n.3 (9th Cir. 2006) (in turn citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005))).  The Plaintiff asserts further that such attempt at relitigation is barred by the doctrine of collateral estoppel, *id.* at 5 (citing *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir.

1994)), and that "[a]voiding such relitigation is precisely why we have the Uniform Act in the first place." *Id.* at 4-5. LCW points the Court to caselaw which concluded that "the *refusal* to recognize a foreign judgment based on some contrived criterion" may work great detriment to the statute's purpose of "promot[ing] reciprocal treatment" by "prompt[ing] foreign courts to deny enforcement to similar [American] judgments." *Id.* at 5 (quoting *Harvardsky Prumyslovy Holding v. Kozeny*, 117 A.D.3d 77, 81-82 (N.Y. App. Div. 2014) (emphasis and alterations added by Plaintiff)).

Turning to the Defendant's argument that enforcement of the final judgment in this case would be inconsistent with Maine's public policy, *id.* (citing *Def.'s Mot.* at 9-10), the Plaintiff responds, first, that this argument "seems aimed at veil-piercing and alter ego liability again," and should be rejected at the motion to dismiss stage for the reasons previously asserted. *Id.* Second, LCW says Ms. Clifford's public policy arguments "seem[] to raise an affirmative defense to recognition of a foreign-country judgment that applies when the judgment 'is repugnant to the public policy of this State or of the United States.'" *Id.* (quoting 14 M.R.S. § 8804(3)(C)). LCW avers that affirmative defenses are premature at the pleading stage and, moreover, that "there is nothing repugnant to American or Maine public policy about enforcing a judgment against an individual that *solicited and received* Plaintiff's payment of $788,709 under circumstances where Plaintiff never received what Plaintiff paid her for." *Id.* (citing *Compl.* ¶¶ 6-10) (emphasis added by Plaintiff).

Finally, the Plaintiff rejects the Defendant's argument that enforcement of the Court of Appeal Judgment is inappropriate pursuant to the Uniform Act because an

appeal is pending, asserting that "the existence of the further appeal is not one of the statutory reasons that permits this Court to forgo the *mandatory* recognition of the Judgment." *Id.* at 6 (citing 14 M.R.S. § 8804(2)-(3)) (emphasis added by Plaintiff). LCW similarly urges the Court to reject the Defendant's argument that recognition of the foreign judgment is inappropriate based on the Defendant's allegations that the Belize Court of Appeal "engage[d] in independent fact finding," *id.* (quoting *Def.'s Mot.* at 11), arguing that this is also not a statutory reason for the Court to refuse to recognize the foreign-country judgment and that Ms. Clifford has not "provided any reason to believe that the Belize Court of Appeal acted outside its duly constituted authority." *Id.* (discussing 14 M.R.S. § 8804(2)-(3)).

## 2.  The Opposition to the Motion to Stay

The Plaintiff also urges the Court to dismiss the Defendant's alternative motion to stay.  *Id.*  Acknowledging that the Uniform Act permits a court to stay proceedings pending an appeal, LCW argues First Circuit precedent is clear that a stay pending appeal is disfavored and the Defendant's burden to show they are entitled to a stay is high.  *Id.* at 6-7 (citing *Boston Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of Boston*, 996 F.3d 37, 44 (1st. Cir. 2021) (listing a four-factor test: "(1) [W]hether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies") (in turn quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009))).  The Plaintiff asserts the Defendant has

not met its burden here. The Plaintiff alleges that it, and not Ms. Clifford, would suffer irreparable injury if its recovery of the damages judgment was delayed. *Id.* at 7. LCW also argues that the Defendant has not made a "strong showing" that the Caribbean Court of Justice will overturn the Court of Appeal Judgment. *Id.* "[A]t the very least, this Court should defer consideration of the motion to stay until after Defendant has answered the Complaint and after the parties have submitted evidence to resolve this matter at summary judgment." *Id.*

### D.   Beth Clifford's Reply[4]

#### 1.   The Reply to the Plaintiff's Opposition to the Motion to Stay

First addressing the motion to stay, Ms. Clifford reiterates in her reply the arguments raised in her motion that a stay is appropriate because an appeal is pending, a stay would not prejudice the Plaintiff because it can still recover from Green, and granting the Plaintiff the relief it seeks could produce conflicting judgments in the event the Caribbean Court of Justice reverses the Court of Appeal. *Def.'s Reply* at 2-3. Ms. Clifford rejects LCW's argument that there is a high burden to grant a stay and asserts the Plaintiff misconstrues *Boston Parent Coalition for Academic Excellence. Id.* at 3 (citing *Pl.'s Opp'n* at 6-7; *Boston Parent Coal. for Acad. Excellence*, 996 F.3d at 44). That case relied on *Nken v. Holder*, 556 U.S. 418, in which Ms. Clifford says the Supreme Court found a stay separate and distinct from injunctive relief and concluded that issuance of a stay is left to the court's discretion,

---

[4]     Ms. Clifford assigned a Roman numeral to the first page of her reply and the page numbers of the ECF filing are thus dissimilar from the page numbers Ms. Clifford affixed to each page. The Court uses the page numbers from the ECF filing in referring to Ms. Clifford's reply. *See Def.'s Reply.*

and that a court contemplating the issuance of a stay "should consider whether the stay applicant has made a strong showing that he is likely to succeed, whether the applicant will be irreparably injured absent a stay, whether issuance of a stay will substantially injure other parties and where the public interest lies." *Id.* (citing *Nken*, 556 U.S. at 434) (pincite added). She reasserts the arguments raised in her motion as to why she is entitled to a stay in the instant case and why public policy supports a stay pending the resolution of the Caribbean Court of Justice appeal. *Id.* at 4-7.

### 2. The Reply to the Plaintiff's Opposition to the Motion to Dismiss

The Defendant reiterates her argument that LCW has not pleaded sufficient facts to survive a Rule 12(b)(6) motion to dismiss. *Id.* at 7. Specifically, she reasserts that "Plaintiff has not stated a claim for alter ego liability," *id.* (citing *Def.'s Mot.* at 5-9), and "[u]nder Maine's two-prong test it is clear that piercing the corporate veil in this context was entirely inappropriate" such that it would be "further inappropriate" for the Court to recognize this underlying foreign judgment. *Id.*

## IV. DISCUSSION OF THE MOTION TO DISMISS OR, ALTERNATIVELY, TO STAY

### A. Legal Standard for Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To properly state a claim, a complaint must contain, at minimum, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In other words, a complaint must contain "sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausible means "'something more than merely possible' or 'merely consistent with a defendant's liability.'" *Germanowski v. Harris*, 854 F.3d 68, 71-72 (1st Cir. 2017) (internal citation omitted) (quoting *Schatz*, 669 F.3d at 55); *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11 (1st Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Evaluating the plausibility of a claim is a "'context-specific' job that compels [judges] 'to draw on' [their] 'judicial experience and common sense.'" *Schatz*, 669 F.3d at 55 (quoting *Iqbal*, 556 U.S. at 679).

Judicial review of a complaint pursuant to a motion to dismiss for failure to state a claim is a "two-step analysis." *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015). "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán*, 734 F.3d at 103 (quoting *Morales-Cruz*, 676 F.3d at 224; *see also Schatz*, 669 F.3d at 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements"). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *García-Catalán*, 734 F.3d at 103 (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

### B.    Discussion

"As this case is in federal court by virtue of diversity jurisdiction, state law provides the substantive rules of our decision."  *Holsum de P.R., Inc. v. Itw Food Equip. Grp. LLC*, 116 F.4th 59, 66 (1st Cir. 2024) (quoting *Lawrence Gen. Hosp. v. Continental Cas. Co.*, 90 F.4th 593, 598 (1st Cir. 2024)).  The Court thus looks to Maine law for the substantive rules of its decision in this case.

### 1.    A Foreign-Country Money Judgment

Maine's Uniform Foreign-Country Money Judgment Recognition Act states that, except as otherwise provided in 14 M.R.S. § 8804(2) and (3), "a court of this State shall recognize a foreign-country judgment to which this Act applies."  14 M.R.S. § 8804(1).  The Uniform Act defines a foreign-country judgment as one which (A) grants or denies recovery of a sum of money, and (B) is final, conclusive, and enforceable under the law of the foreign country where it was rendered.  14 M.R.S. § 8803(1)(A)-(B).

The Uniform Act also provides exceptions to its own general rule.  First, a court of this State may not recognize a foreign-country judgment if the judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with the requirements of due process; the foreign court lacked personal jurisdiction over the defendant; or the foreign court did not have subject matter jurisdiction.  14 M.R.S. § 8804(2).

The Uniform Act further states that a court of this State has discretion not to recognize a foreign-country judgment if:

18

A. The defendant in the foreign proceeding did not receive notice of the proceeding in sufficient time to enable the defendant to defend;

B. The judgment was obtained by fraud that deprived the losing party of an adequate opportunity to present its case;

C. The judgment or the cause of action or claim for relief on which the judgment is based is repugnant to the public policy of this State or the United States;

D. The judgment conflicts with another final and conclusive judgment;

E. The proceeding in the foreign country was contrary to an agreement between the parties under which the dispute in question was to be determined otherwise than by proceedings in that foreign court;

F. In the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action;

G. The judgment as rendered in circumstances that raise substantial doubt about the integrity of the rendering court with respect to the judgment; or

H. The specific proceeding in the foreign court leading to the judgment was not compatible with the requirements of law.

14 M.R.S. § 8804(3).

A party seeking recognition of a foreign-country judgment bears the burden of establishing that the Uniform Act applies to the foreign-country judgment. 14 M.R.S. § 8803(3). A party resisting recognition of a foreign-country judgment has the burden of establishing that a ground for nonrecognition as stated in 14 M.R.S. § 8804(2) or (3) exists. 14 M.R.S. § 8804(4).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain, at minimum, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Here, the Court readily concludes the Plaintiff has shown the Court of Appeal Judgment is a foreign-country judgment, 14

M.R.S. § 8802(2), and that the judgment for $788,709.00 plus 6% interest per annum from August 5, 2019 "[g]rants or denies recovery of a sum of money," 14 M.R.S. § 8803(1)(A).

### 2.    A Final, Conclusive and Enforceable Foreign Judgment

The Court is not convinced, however, from the Plaintiff's pleadings that "[t]he Court of Appeal Judgment is final and fully enforceable against Clifford in Belize notwithstanding Clifford and Beltway's notice of appeal to the Caribbean Court of Justice." *Compl.* ¶ 18 (discussing 14 M.R.S. 8803(1)(B)).  In reviewing a complaint confronted with a Rule 12(b)(6) motion to dismiss, "the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán*, 734 F.3d at 103 (quoting *Morales-Cruz*, 676 F.3d at 224); *see also Schatz*, 669 F.3d at 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements").  The Court concludes that LCW's assertion that the Court of Appeal Judgment "is final and fully enforceable against Clifford in Belize notwithstanding Clifford and Beltway's notice of appeal to the Caribbean Court of Justice," *Compl.* ¶ 18, is a conclusory statement "which need not be credited." *García-Catalán*, 734 F.3d at 103.

First, the Court is unpersuaded by LCW's argument in its opposition to the motion to dismiss that "the existence of the further appeal is not one of the statutory reasons that permits this Court to forgo the *mandatory* recognition of the Judgment." *Pl.'s Opp'n* at 6 (citing 14 M.R.S. § 8804(2)-(3)) (emphasis in original).  The Plaintiff

is correct that a pending appeal is not a statutory reason for the Court to forgo recognition after it has first found the Uniform Act applicable.  *See* 14 M.R.S. § 8804. However, by the Court's reading of the statute, a pending appeal goes not to 14 M.R.S. § 8804, but to the initial determination of whether the Uniform Act applies pursuant to 14 M.R.S. § 8803 because a pending appeal is relevant to whether the foreign-country judgment "[i]s final, conclusive and enforceable under the law of the foreign country where it was rendered."  14 M.R.S. § 8803(1)(B).  In other words, if the moving party has not established that a foreign-country judgment pending appeal "[i]s final, conclusive and enforceable under the law of the foreign country where it was rendered," the Court cannot conclude that the Uniform Act is applicable to that foreign-country judgment.

A second wrinkle is raised here.  The Plaintiff cites caselaw from the First Circuit, the District of Maine, and the District of Massachusetts which it alleges held that a judgment is enforceable in those jurisdictions notwithstanding a pending appeal.  *See Pl.'s Opp'n* at 7 (citing *Kane*, 254 F.3d at 328; *Bartlett*, 586 A.2d at 1265; *Bostick*, 2019 U.S. Dist. LEXIS 51231, at *13).  However, as LCW observes, the Uniform Act explicitly requires a party seeking enforcement of a foreign-country judgment to establish that the judgment is final "under the law of the country where it was rendered."  14 M.R.S. § 8803(1)(B).  Here, that country is Belize.  The Defendant in her motion to dismiss has told the Court that Ms. Clifford and Beltway filed an appeal on July 19, 2024 and the Court of Appeal granted leave to appeal to

21

the Caribbean Court of Justice on October 10, 2024. *Def.'s Mot.* at 12 (citing *Notice of Appl. for Leave to Appeal*). LCW acknowledges the pending appeal. *Compl.* ¶ 17.

This Court does not sit in Belize and is unfamiliar with that country's legal system. However, it stands to reason that the Court of Appeal Judgment is not final under the law of Belize when the Court of Appeal granted Ms. Clifford and Beltway leave to appeal to the Caribbean Court of Justice. While the judgment may become final at some point in future, namely after the Caribbean Court of Justice has issued its judgment, the Plaintiff has not pleaded sufficient facts or presented adequate evidence to allow the Court to reasonably infer the judgment is final in its present state and thus ripe for adjudication pursuant to the Uniform Act. The Plaintiff has in fact given the Court no information and cited no caselaw from Belize that would allow the Court to conclude LCW has met its burden to plausibly establish that the Court of Appeal Judgment is final in Belize, notwithstanding the appeal the Court of Appeal itself certified.

Even if the Court could somehow consider the judgment final under Belize law while it is on appeal, it is by no means clear it would be enforceable during an appeal. The Uniform Act requires not only finality but also enforceability, and further requires finality and enforceability under Belize law. 14 M.R.S. § 8803(1)(B) ("final, conclusive and enforceable under the law of the foreign country where it was rendered"). The circumstances under which a final judgment under appeal is enforceable pending appeal is hardly straightforward under federal law. *See Rebarber-Ocasio v. Feliciano-Muñoz*, No. 3:18-cv-01218-JAW, No. 3:16-cv-02719-

JAW, 2022 U.S. Dist. LEXIS 230823 (D.P.R. Nov. 2, 2022) (addressing the requirements of an appeal bond or security); FED. R. CIV. P. 62. The Court assumes nothing about the law of Belize regarding whether a civil judgment is deemed final and enforceable while on appeal as required by § 8803(1)(B). As the Plaintiff "has the burden of establishing that this Act applies to the foreign-country judgment," 14 M.R.S. § 8803(3), the Plaintiff's failure to demonstrate that the foreign judgment is "final, conclusive and enforceable" under Belize law means that the foreign judgment is not yet enforceable under the Uniform Act.

### 3.   Dismissal or Stay

One additional issue warrants discussion. The Plaintiff alternatively moves the Court to grant its motion for stay pending the Caribbean Court of Justice's decision which would, undeniably, constitute a final judgment within the meaning of 14 M.R.S. § 8803(1). The Uniform Act addresses this situation directly:

> If a party establishes that an appeal from a foreign-country judgment is pending or will be taken, the court may stay any proceeding with regard to the foreign-country judgment until the appeal is concluded, the time for appeal expires or the appellant has had sufficient time to prosecute the appeal and has failed to do so.

14 M.R.S. § 8808.

The Court will not exercise its discretion to stay the current proceeding pending the resolution of the appeal. First, as noted, the Court is hesitant to insert itself into another country's legal system. This Court sits in the District of Maine within the First Circuit; it is not familiar with the law of Belize, the system of legal proceedings in Belize, or the workings of the Caribbean Court of Justice. The parties

have made no representations, for example, about how long it may take the Caribbean Court of Justice to issue its opinion on the appeal. Without some indication about how long a stay would be for, the Court is reluctant to keep a case pending on its docket without any clear notion of an end date.

Second, the parties have tangled over whether LCW's judgment against Ms. Clifford is justified under Belize law. According to Ms. Clifford, the original judgment in Belize issued against Green and not against Ms. Clifford personally. *Def.'s Mot.* at 6. Ms. Clifford says that the Belize Court of Appeal dismissed Green's appeal but altered the High Court's judgment to include both Ms. Clifford and Beltway. *Id.* at 7. Ms. Clifford also says that both she and Beltway appealed to the Caribbean Court of Justice, and on October 10, 2024, the Caribbean Court of Justice granted leave to appeal. *Id.*

The parties have otherwise provided no detail about the proceedings before the Caribbean Court of Justice. However, this Court assumes that Ms. Clifford must be challenging the Court of Appeal decision to change the High Court judgment and to rule that the judgment applies against her. Again, the Court knows nothing about Belize law on whether the judgment should run against Ms. Clifford, much less whether such a judgment imposed by an appeals court would be enforceable while on appeal to a higher appeals court. But based on this record, where one court declined to issue a personal judgment against her and an appeals court revised the judgment to include a personal judgment, the Court assumes that the Caribbean Court of

Justice must be addressing the validity of the judgment against Ms. Clifford that LCW is attempting to enforce in this action.

Assuming this is correct, it seems possible that the Caribbean Court of Justice might revise the Court of Appeal's ruling and reinstate the judgment against Green only, voiding Ms. Clifford's personal liability. If so (and this Court is in no position to evaluate the likely result under Belize law), the Caribbean Court of Justice's ruling could moot the issues now before this Court. Thus, if the Court stayed this case, it could be holding a case in abeyance that will never be brought forward because there will be no final judgment against Ms. Clifford. All of this encourages the Court not to stay this action, but to dismiss it without prejudice, so that if the Caribbean Court of Justice rules in favor of LCW, LCW may then seek redress, if necessary, in this Court, against Ms. Clifford.

The Court concludes it is proper to grant the motion to dismiss and not grant a stay, but it will do so without prejudice so that if it becomes necessary for the Plaintiff to reinitiate this action under the Uniform Act once the judgment does become "final, conclusive, and enforceable," it may do so.

## V.   CONCLUSION

The Court GRANTS in part and DISMISSES in part the Defendant's Motion to Dismiss or, Alternatively, Motion to Stay (ECF No. 20). The Court grants the Defendant's motion insofar as it requests dismissal and dismisses the motion without prejudice insofar as it requests a stay. The Court ORDERS the matter be DISMISSED without prejudice.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 5th day of December, 2024